UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLL KING MENDEZ,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LOANME, INC.; JONATHAN WILLIAMS; and DOES 1–50,<br><br>　　　　　　　　Defendants. | Case No. 20-cv-00002-BAS-AHG<br><br>**ORDER:**<br><br>**(1) DENYING WITHOUT PREJUDICE MOTION TO COMPEL ARBITRATION (ECF No. 9);**<br><br>**AND**<br><br>**(2) SETTING EVIDENTIARY HEARING** |

　　　Before the Court is Defendant LoanMe, Inc.'s and Jonathan Williams' (collectively, "Defendants") Motion to Compel Arbitration ("Motion"). (ECF No. 9.) For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** the Motion.

**I.　BACKGROUND**

　　　On January 2, 2020, Plaintiff Caroll King Mendez ("Plaintiff") filed a Complaint alleging that Defendants targeted him on the basis of his race and ethnicity for "a predatory loan that was funded without any underwriting safeguards for the sole purpose of failure[,]" in violations of various federal laws. (Compl. ¶ III.C, ECF No. 1.) Plaintiff alleges that although he pre-qualified for a $50,000 business loan "with a reasonable interest rate," he was "baited and switched" by Defendants and instead offered a $26,500 loan at 104% APR for 10 years after he paid Defendant Jonathan Williams $274,612.60. (*Id.* ¶¶ III.A, C.) Plaintiff claims that despite attempts to contact Defendants to discuss

their original agreement to adequately capitalize his business, Defendants have refused to communicate with him. (*Id.* ¶ III.C.)

Defendants bring the instant Motion on the basis that Plaintiff agreed to arbitrate all claims arising from this transaction. Defendants attach the promissory note ("Note") signed by Plaintiff, which contains a three-page agreement to arbitrate ("Arbitration Provision") allowing either party to elect to pursue arbitration for any disputes based on federal, state, or common law arising from the Note. (Mot. at 3–4; Note at 11–13, Ex. A to Decl. of Dori Rhodes in supp. of Mot. ("Rhodes Decl."), ECF No. 9-1.) The Arbitration Provision includes an opt-out process which allowed Plaintiff to opt out "within 60 calendar days of the date of this Note" by sending a written notice to LoanMe at a specified address. (Note at 11.) The Arbitration Provision further states: "Unless you opt out using the procedure described above, you acknowledge and agree that this Arbitration Provision will apply." (*Id.*) The Note includes a final paragraph that states, in relevant part, that the "guarantor has read all of the terms and conditions of this guarantee, including the arbitration provision that follows the note, and agrees to be bound by those terms." (Note at 9.) The box next to this paragraph is checked.[1] (*Id.*)

The Note does not contain a signature block. Instead, the header on the first page includes a timestamp stating, "Sign Time: 10/10/2019 5:03:03 PM," and an associated internet protocol (IP) address. (Rhodes Decl. ¶ 3; Note at 1.) Defendants represent that this is Plaintiff's electronic signature, and Plaintiff does not dispute this.[2] (Rhodes Decl. ¶ 3.) Plaintiff was thus required to opt out, if he so chose, by December 9, 2019. Dori Rhodes, a compliance analyst with LoanMe, attests that LoanMe did not receive a timely written notice from Plaintiff exercising his right to opt out of the Arbitration Provision. (Rhodes Decl. ¶ 7.) Plaintiff disputes this, alleging that he mailed his opt-out letter to

---

[1] The Arbitration Provision does not include its own signature block or any other indication of mutual assent other than this checked box and Plaintiff's electronic signature on the Note.

[2] Plaintiff claims that although the Note's terms were significantly less than the original $50,000 he had pre-qualified for, he was unable to decline it "due to making business obligations based on receiving a pre-approval from a loan officer for $50,000." (Decl. of Caroll King Mendez ¶ 3, ECF No. 11-2.)

LoanMe on December 6, 2019, three days before the 60-day opt-out period expired. (Opp'n to Mot. ("Opp'n") at 2, ECF No. 11.)  Attached to his Opposition is a letter reflecting this date. (Arbitration Opt-Out Letter, Ex. B to Decl. of Caroll King Mendez in supp. of Opp'n ("Mendez Decl."), ECF No. 11-4.)[3]

Defendants contend that Plaintiff has not previously raised the issue of his opt-out, that LoanMe has no record of receiving an opt-out letter from Plaintiff at any time, and that the metadata associated with the letter attached to Plaintiff's Opposition "indicates the PDF was created on April 20, 2020"—not on December 6, 2019—and is therefore untimely. (Reply in supp. of Mot. ("Reply") at 3, ECF No. 12.)  In the alternative, Defendants argue that because the Arbitration Provision delegates issues of its "validity and scope" to an arbitrator, whether Plaintiff properly exercised his opt out rights should not be decided by the Court but should instead itself be submitted to the arbitrator. (Reply at 3–5.)

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts involving interstate commerce. 9 U.S.C. §§ 1, 2. If a party is bound to an arbitration agreement that falls within the scope of the FAA,[4] the party may move to compel arbitration in a federal district court. *Id.* §§ 3–4; *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "Generally, the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (citation omitted).

Given this strong federal preference for arbitration and the contractual nature of

---

[3] The address on the purported Arbitration Opt-Out Letter contains a typographical error. It lists LoanMe's zip code at 920806 instead of 92806.

[4] Defendants allege the FAA applies because the parties are interstate (Plaintiff is located in California, LoanMe is a Nevada corporation), the underlying transaction involves a commercial loan and interstate products, and the Arbitration Provision identifies the FAA as the governing law. (Mot. at 7–8.) Plaintiff does not contest these facts but argues that the FAA is inapplicable because Plaintiff opted out of arbitration proceedings altogether. (Opp'n at 2.)

arbitration agreements, "a district court has little discretion to deny an arbitration motion" once it determines that a claim is covered by a written and enforceable arbitration agreement. *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1010 (S.D. Cal. Nov. 9, 2017) (quotations omitted). Instead, a district court's determinations are limited to (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### III. ANALYSIS

Regarding Defendants' delegation argument, the Court finds that the dispute over whether Plaintiff timely opted out is not reserved to the arbitrator. The Court then turns to the issue of contract formation and the specific evidentiary issues raised regarding Plaintiff's purported Arbitration Opt-Out Letter.

#### A. Delegation to Arbitrator

Defendants argue that because language in the Arbitration Provision expressly delegates the opt-out dispute to the arbitrator, it is not within the Court's purview to determine. (Mot. at 8; Reply at 3–4.) The Arbitration Provision contained in the Note states, "If a dispute arises, either you or we may elect to arbitrate the dispute." (Note at 12.) The provision also includes definitions stating the following:

> For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision . . . .

(*Id.*) Defendants argue that the delegating the "validity and scope of this Arbitration Provision" clearly and unmistakably reserves disputes arising from opt-out provisions to the arbitrator.

It is true, as Defendants state, that questions of arbitrability—including "gateway matters" regarding whether a party or dispute is subject to arbitration—cannot be determined by the court if there is "clear and unmistakable evidence that the parties wanted an arbitrator to resolve the dispute." *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (citations omitted); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, __ U.S. __, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.").

However, "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute[.]"); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). Thus, "because an arbitrator's jurisdiction is rooted in the agreement of the parties, a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991).

Defendants' attempt to apply the delegation clause from the Arbitration Provision to the instant dispute is improper because it necessarily assumes Plaintiff's consent to—and therefore the existence of—the Arbitration Provision itself. However, the dispute over Plaintiff's opt-out directly implicates the existence of an arbitration agreement between the parties. Whether or not Plaintiff assented to the Arbitration Provision—including the delegation clause—is wholly contingent on whether or not he successfully opted out of the Arbitration Provision. As discussed below in more detail, mutual consent

is necessary for the formation of a contract. Cal. Civ. Code § 1550. Case law makes clear that in these circumstances, where an essential element underlying the existence of a contract is called into question, the court is tasked with resolving the issue. *Three Valleys*, 925 F.2d at 1140–41; *see also Granite Rock*, 561 U.S. at 297 (finding that a court cannot order the arbitration of any dispute if the court is not satisfied that the parties mutually agreed to arbitrate that dispute); 9 U.S.C. § 4 (requiring that the court order the parties to proceed to arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue").

Defendants' case citations are not to the contrary. In *Mohamed v. Uber Tech., Inc.* and *Rent-A-Center v. Jackson*, the issues raised were whether the arbitrability of class actions and unconscionability claims, respectively, were delegated under arbitration agreements. *Mohamed*, 848 F.3d 1201 1207 (9th Cir. 2016); *Rent-A-Center*, 561 U.S. 63, 66 (2010). In both cases, unlike here, it was undisputed that the plaintiffs accepted the agreements to arbitrate. *See Mohamed*, 848 F.3d at 1207 (stating that plaintiffs did not exercise right to opt out); *Rent-A-Center*, 561 U.S. at 65 (noting that plaintiff signed an agreement to arbitrate).

Further, Defendants' attempt to distinguish from *Erwin v. Citibank, N.A.*, No. 3:16-cv-03040-GPC-KSC, 2017 WL 1047575 (S.D. Cal. Mar. 20, 2017), is unavailing. In *Erwin*, the court determined that a dispute over whether the plaintiff opted out of an arbitration agreement was a gateway issue that the court was required to resolve. *Id.* at *4. In so doing, the court noted that the arbitration agreement at issue did not include any clear and unmistakable delegation to the arbitrator questions of arbitrability. *Id.* at *5. However, Defendant ignores the court's primary reason for finding that the terms of the arbitration agreement did not apply to the parties' opt-out dispute. The court noted, as the Court does here, that requiring the plaintiff "to arbitrate where he denies entering into" an arbitration agreement in the first place "would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'" *Id.* (citing *Three Valleys*, 925 F.2d at 1142) (internal

quotations omitted). The Court here relies on this same principle to find that the instant opt-out dispute cannot be subject to a delegation clause contained within the Arbitration Provision from which Plaintiff alleges he opted out.[5]

Because Plaintiff "cannot be required to submit to arbitration any dispute which he has not agreed so to submit," whether or not Plaintiff timely opted out—and therefore whether the parties mutually agreed to the Arbitration Provision—is an issue for the Court to resolve. *See Olivas v. Hertz Corp.*, No. 17-CV-01083-BAS-NLS, 2018 WL 1306422, at *5 (S.D. Cal. Mar. 12, 2018). The Court now turns to the threshold issue of the existence of an agreement to arbitrate. *See Three Valleys*, 925 F.2d at 1140–41.

### B. Formation of Contract

Courts generally "apply ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter (including arbitrability)." *First Options*, 514 U.S. at 944. The party seeking arbitration has "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

To determine whether the parties agreed to arbitrate, the Court turns to California law governing the formation of contracts. *See, e.g., Norcia*, 845 F.3d at 1289; *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). California Civil Code § 1550 requires three elements for contract formation: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Shaw v. Regents of Univ. of Calif.*, 58 Cal. App. 4th 44, 52 (1997) (quoting *Marshall & Co. v.*

---

[5] The Court also notes that whether or not Plaintiff timely opted out of the Arbitration Provision is not a question of the agreement's validity, but rather whether or not an agreement was formed at all. *See Rent-A-Ctr.*, 561 U.S. at 70 n.2 ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[.]'") (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). Thus, even if this dispute was capable of proper delegation to an arbitrator, the language cited by Defendants regarding "the validity and scope" of the Arbitration Provision does not appear to delegate initial questions of contract formation to an arbitrator.

*Weisel*, 242 Cal. App. 2d 191, 196 (1966)). Plaintiff's opt-out claim draws into question whether the second element, commonly referred to as "mutual assent," is satisfied.

"Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Alexander v. Codemasters Grp. Ltd.*, 104 Cal. App. 4th 129, 141 (2002). It is typically "manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001). In the case of a written contract, a party's assent can be manifested by a signature or through conduct. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms."); *Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228, 1238 (2017) ("Under California law, consent to a written contract may be implied by conduct.").

It is undisputed that Plaintiff electronically signed the Note, within which the Arbitration Provision is subsumed. It is also undisputed that by signing, Plaintiff agreed to be bound by the terms of the Note and the Arbitration Provision, including the opt-out procedure. (Note at 9.) Under these circumstances, Plaintiff's electronic signature on the Note would constitute acceptance of the Arbitration Provision *only if* Plaintiff failed to exercise the opt-out procedure made available to him. *See Norcia*, 845 F.3d at 1284–85 ("An offeree's silence may be deemed to be consent to a contract when the offeree has a duty to respond to an offer and *fails to act in the face of this duty*.") (emphasis added); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (finding that a plaintiff's failure to opt out after signing an acknowledgment form was "indistinguishable from overt acceptance" to an arbitration agreement); *Gentry v. Super. Ct.*, 42 Cal. 4th 443, 468 (2007) (holding that an employee's signature on receipt of "issue resolution package," which included a 30-day opt-out provision of arbitration agreement, "reasonably led" his employer to believe "that his failure to opt out constituted acceptance of the arbitration agreement"), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563

U.S. 333 (2011). This is made clear by the terms of the Arbitration Provision itself, which conditioned Plaintiff's agreement to its terms on his failure to opt out. (*See* Note at 11 ("*Unless you opt out using the procedure described above*, you acknowledge and agree that this Arbitration Provision will apply.") (emphasis added).)

Here, Plaintiff disputes Defendants' claim that he failed to opt out in accordance with the procedures in the Arbitration Provision. *Contrast Najd*, 294 F.3d at 1106 ("Najd acknowledged receipt of the packet in writing and did not exercise his option to opt out."); *Gentry*, 42 Cal. 4th at 451 ("The packet included a form that gave the employee 30 days to opt out of the arbitration agreement. Gentry did not do so."). In fact, he includes as evidence his purported Arbitration Opt-Out Letter to LoanMe dated December 6, 2019, including "his name, address, loan number, and a statement that [he] wish[ed] to opt out of this Arbitration Provision," and indicating that it was "Sent Via USPS First Class Mail" to LoanMe's address.[6] (Note at 7; Arbitration Opt-Out Letter.) The Court is aware that Defendants contest the authenticity of the letter by attaching a screenshot of document metadata for the letter showing that the letter was created on April 20, 2020—not on, or prior to, December 6, 2019. (Supp. Decl. of Elizabeth C. Farrell in supp. of Mot. ("Farrell Decl.") ¶ 6, ECF No. 13; Ex. B to Farrell Decl., ECF No. 13-2.) However, given the parties' conflicting account, the Court cannot infer Plaintiff's consent on the facts before it and conclude that an enforceable contract was formed between the parties. *See Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citing *Three Valleys*, 925 F.2d at 1141) ("Only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement.").

### C.  Evidentiary Hearing

Where the making of an arbitration agreement is in dispute, the FAA instructs courts to "proceed summarily to the trial thereof." 9 U.S.C. § 4. If "the party alleged to be in

---

[6] *But see* footnote 3, *supra*.

default" demands a jury trial by "the return day of the notice of application," courts are required to "make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose." *Id.* "Courts confronted with the issue have generally determined that 'the return day of the notice of application,' by which a plaintiff must file a demand for jury trial, is the date on which the plaintiff's opposition to a petition to compel arbitration is due." *Clifford v. Trump*, No. CV-18-02217-SJO (FFMx), 2018 WL 5263189, at *2 (C.D. Cal. Mar. 29, 2018) (citing cases).

Plaintiff demanded a jury trial in his Complaint as to the alleged statutory violations stemming from the commercial loan but has made no specific demand for a jury trial regarding the issue of arbitration. (Compl. at 8.) "The Ninth Circuit has not yet determined whether a general demand for a jury trial satisfies the FAA's procedure[.]" *Mayorga v. Ronaldo*, No. 2:19-cv-00168-JAD-DJA, 2020 WL 5821953, at *10 (D. Nev. Sept. 30, 2020). However, several courts have held that the statutory right to a jury trial under the FAA is not invoked where a plaintiff does not make a jury demand specific to the issue of the making of an arbitration agreement. *See Mayorga*, 2020 WL 5821953, at *11; *Castillo v. Lowe's HIW, Inc.*, No. C13-4590 TEH, 2013 WL 12143002, at *4 (N.D. Cal. Dec. 2, 2013) (finding that the plaintiff "did not make a proper and timely request for a jury trial" because he did not "demand one in his opposition to Defendant's motion to compel arbitration or prior to the date the opposition brief was due"); *Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10-2373 WBS, 2011 WL 6702424, at *9 (E.D. Cal. Dec. 21, 2011) ("Since Alvarez did not demand a jury trial on or before the return day for T–Mobile's motion to compel arbitration, he no longer has the right to demand a jury trial on the issue of whether he entered into an agreement to arbitrate with T–Mobile when he activated his phone service.").

The Court finds this line of authority persuasive. Plaintiff has not timely submitted a jury demand with his Opposition to Defendant's Motion to Compel Arbitration. He refers only to a "hearing on the Motion" and requests that the Court deny it "and enter a

default Judgment pursuant to Rule against both defendants." (Opp'n at 2, 4.) Neither this language nor any other, even if generously construed when considering Plaintiff's status as a pro se litigant, can be understood to raise a demand for a jury trial on the issue of whether he timely opted out of the agreement to arbitrate with Defendants.

Nonetheless, in light of the conflicting evidence from the parties about the authenticity of the Arbitration Opt-Out Letter, and therefore its timeliness, the Court finds that this matter necessitates an evidentiary hearing. *Alvarez*, 2011 WL 6702424, at *8 ("If doubts as to the formation of an agreement to arbitrate exist, the matter should be resolved through an evidentiary hearing or mini-trial."); *see also McCarthy v. Providential Corp.*, No. C 94-0627 FMS, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994).

## IV. CONCLUSION AND ORDER

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion to Compel Arbitration (ECF No. 9). An evidentiary hearing is set for **December 3, 2020** at **10:00 a.m.** in **Courtroom 4B**. The parties should be prepared to present evidence regarding whether Plaintiff's Arbitration Opt-Out Letter was timely submitted to Defendants pursuant to the procedures in the Arbitration Provision. The Court will reconsider Defendants' request for arbitration in light of the evidence presented at the hearing.

**IT IS SO ORDERED.**

**DATED: October 13, 2020**

Hon. Cynthia Bashant
United States District Judge